**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

JOANNE PALAZZOLO,                       :
                 Plaintiff,             :                          :
        vs.                             :
                                        : CIVIL ACTION
DAVID C. DAMSKER, BUCKS COUNTY,         :
PENNSYLVANIA, BUCKS COUNTY,             : NO. 10-CV-7430
PENNSYLVANIA HEALTH DEPARTMENT,         :
JOHN DOE, RITA ROE, and all             :
others acting in concert with           :
them and/or on their behalf,            :
                 Defendants.            :


**MEMORANDUM AND ORDER**

**JOYNER, C.J.**                                    **June 30, 2011**


        Presently pending before this Court is the Motion for

Dismissal of the Plaintiff's Complaint filed by the Defendants,

David C. Damsker ("Damsker"), Bucks County Pennsylvania (the

"County"), Bucks County Pennsylvania Health Department (the

"Health Department"), John Doe, Rita Roe, and all others acting

in concert with them and/or on their behalf (Doc. No. 3) pursuant

to Fed. R. Civ P. 12(b)(6). For the reasons outlined in the

following paragraphs, the Motion shall be granted.

### Factual Background

        According to the allegations in the Complaint,[1] Plaintiff

_____

        [1]Jurisdiction in this matter is predicated upon both federal
question pursuant to  28 U.S.C. §1331 as one of the claims is
based on the Age Discrimination in Employment Act, 29 U.S.C.
§621, and supplemental jurisdiction under 28 U.S.C. §1367 given
that the other claims are related to the original claim and they
form part of the same case or controversy under Article III of
the United States Constitution.

Joanne Palazzolo, was employed as the Business Manager in the Health Department from January 2007 until August 18, 2010. The Health Department is a department within Bucks County, financed and operated by Bucks County. The County is a political subdivision of the Commonwealth of Pennsylvania. Defendant David C. Damsker is the Director of the Health Department and is responsible for the overall day-to-day operation and management of the Health Department, and was Mrs. Palazzolo's immediate supervisor. As the Health Department Business Manager, Plaintiff served as an advisor to Defendant Damsker. Plaintiff was responsible for budget preparation, fiscal and grants management, and participation in the development of both long and short term plans relating to public health programs. She was also responsible for assisting Damsker in the maintenance of internal fiscal controls and monitoring capital equipment purchases, serving as a liaison on behalf of Damsker with other Bucks County departments and row offices on fiscal matters, as well as with federal and state grant and fiscal administrators, and for developing and implementing departmental fiscal policies and procedures for the Health Department in accordance with government guidelines.

The current litigation arises out of Plaintiff's termination from the Health Department on August 18, 2010. Throughout her

employment, Plaintiff alleges that she observed incidents of fraud and waste in connection with the time-keeping practices of the Health Department which allowed employees to falsely report their hours in order to obtain compensation. Plaintiff repeatedly reported the continuous theft of time in the Health Department to Damsker and Damsker's supervisors including Joseph Funk, the Director of Human Services, and Brian Hessenthaler, acting Chief Operating Officer, but Damsker and his supervisors did not take any action in response to these reports.

On August 8th, 2010, Plaintiff reported to Mr. Hessenthaler various instances of fraudulent time theft in the Health Department; on August 9th she received a phone call from Mr. Funk concerning her report from the previous day. As a result of the phone call, Funk visited the offices and met with Damsker. That same afternoon, Damsker sent an email to all the department employees regarding the need for them to accurately sign-in and sign-out of work for time record-keeping purposes.

On August 10th, Plaintiff received a call from the Assistant County Controller, Kimberly Doran, requesting that Plaintiff meet with her and the County Investigator, David Rouland, the next day. Plaintiff agreed to the meeting. Before she left the office on August 11th, Plaintiff signed out on the white board in the Health Department office and stated she was on County business. At the meeting, Plaintiff answered questions about the

theft of time that she reported at the Health Department and about an hourly employee in the Department who was permitted to work from home, contrary to County policy. At the end of the meeting, Ms. Doran instructed Plaintiff not to disclose to anyone the fact that they had met or the substance of their meeting.

Upon her return to the office, Damsker repeatedly questioned Plaintiff about her whereabouts that afternoon; this questioning continued the following day. Ultimately, Plaintiff told Damsker that she was out of the office on County business and would have the person with whom she had met contact him and confirm. Plaintiff was very upset by Damsker's persistent questioning.

On the way home from work that day, Plaintiff got in a car accident. She was examined by her physician and was told that she should not return to work until August 18th. In the meantime, Ms. Doran sent Damsker an email confirming that she met with Plaintiff on August 11th on County business.

While at home, Plaintiff emailed Ms. Doran and Mr. Hessenthaler requesting their protection from retaliation by Dr. Damsker under the Pennsylvania Whistleblower Law. Plaintiff sent another email to Ms. Doran to the same effect a few days later. However, when Plaintiff returned to work on August 18th, she was fired by Ms. Doran, who explained the reason she was being fired was because she lied to Dr. Damsker about her whereabouts on August 11th, 2010.

On December 21, 2010, Plaintiff initiated this lawsuit seeking to recover damages under the theories of common law wrongful discharge (Count I), the Pennsylvania Whistleblower Law, 43 P.S. § 1421 *et seq.* ("PWL") (Count II), and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et. seq.* ("ADEA") (Count III). Plaintiff filed her Amended Complaint, which asserts the same counts, on February 8, 2011. Defendants move to dismiss the wrongful discharge complaint against them (Count I) on the grounds that the County and Damsker are entitled to immunity under the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa. C. S. §8541, *et. seq.*, and on the grounds that Plaintiff's claim for wrongful discharge is preempted by the PWL. Defendants also move to dismiss Plaintiff's claim for age discrimination under the ADEA (Count III) for failure to state a claim. Finally, Defendants move to dismiss Plaintiff's claims for punitive damages as to the County in Count I and as to the County and Dr. Damsker in Count II on the grounds that punitive damages are unavailable to the Plaintiff.

## Standards for Ruling on 12(b)(6) Motions

Under Rule 8 of the Federal Rules of Civil Procedure, a plaintiff's complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Under this Rule, a pleading "does not require 'detailed factual allegations,' but it demands more than

an unadorned, the-defendant-unlawfully-harmed-me accusation.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed 2d 868, 883 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929, 940 (2007)). Although detailed factual allegations are not required, a complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement"' is not sufficient. Id. *(*citing Twombly, 550 U.S. at 555).

Federal Rule of Civil Procedure 12(b)(6) states that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12 (b)(6). In order to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 570). In Iqbal, the Supreme Court outlined a two-part analysis that district courts must conduct when reviewing a complaint challenged under 12(b)(6). Flower v. UPMC Shadyside, 578 F. 3d 203, 210-11 (3rd Cir. 2009). The district court must first separate the "factual and legal elements of a claim" and "accept all of the complaint's well pleaded facts as true, but may disregard any legal conclusions." Id. (quoting Iqbal, 129 S. Ct. at 1949). Second, the district court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim

6

for relief." Id. (quoting Iqbal, 129 S. Ct. at 1950). A
complaint must do more than allege the plaintiff's entitlement to
relief, but instead must "show" such entitlement with its facts
in order to survive a motion to dismiss. Id. Therefore,
"[d]etermining whether a complaint states a plausible claim for
relief will . . . be a context-specific task that requires the
court to draw on its judicial experience and common sense."
McTernan v. City of York, 577 F. 3d 521, 530 (3d Cir. 2009)
(quoting Iqbal, 129 S. Ct. at 1950). Furthermore, in Wilkerson
v. New Media Technology Charter School, Inc., 522 F.3d 315 (3d
Cir. 2008), the court made it clear that the paradigm announced
in Twombly applies with equal force to analyzing the adequacy of
claims of employment discrimination. Wilkerson, 522 F. 3d at
322.

## Discussion

*1. Plaintiff's Claim for Wrongful Discharge - Count I*

Count I of the Plaintiff's complaint is for wrongful
discharge, claiming that the defendants violated the public
policy of the Commonwealth of Pennsylvania by terminating her
employment. Plaintiff alleges that the Defendants terminated her
because she reported and opposed the practice of employees in the
Health Department failing to sign-in and sign-out of work in
accordance with County policy, which resulted in their being
compensated for hours they did not work and stealing time from

7

the County.  As well, the complaint alleges that Defendants
terminated Plaintiff's employment because she participated in an
investigation of this practice by the Bucks County Auditor by
providing truthful information in that investigation and
complying with all instructions and requests of the County
Auditor.

*A. Governmental Immunity*

In response to the court's abrogation of government immunity
in Ayala v. Philadelphia Board of Public Education, 453 Pa. 584
(1973), the Pennsylvania Legislature enacted the Political
Subdivision Tort Claims Act, 42 Pa. C.S. §§ 8541-8564.  See,
Mascaro v. Youth Study Center, 514 Pa. 351, 355, 523 A.2d 1118,
1120 (1987).  The Act "raises the shield of governmental immunity
against any damages on account of any injury to a person or
property caused by any act of a local agency or employee thereof
or any other person, except as otherwise provided in 42 Pa. C. S.
§ 8542." Id.

Defendants first argue that the wrongful discharge claim in
Count I of the Amended Complaint should be dismissed because the
County and Defendant Damsker are entitled to immunity under the
Tort Claims Act,  Plaintiff rejoins that neither the County nor
Damsker is entitled to immunity because Plaintiff's damages were
caused by the negligent acts of Bucks County by firing her for
reporting waste or wrongdoing regarding public funds and because

8

Plaintiff's employment with Bucks County is personal property which was in the control of Bucks County and thus fall under two of the  exceptions to immunity granted under the Tort Claims Act.

*1. Bucks County's Immunity*

Under the Tort Claims Act, local agencies are generally exempt from damages for any injuries caused by the agency or its employees. 42 Pa. Cons. Stat §8541.  An injured party may recover in tort from a municipality only if: (1) damages would be otherwise recoverable under common law or statute; (2) the injury was caused by the negligent act of the local agency or an employee acting within the scope of his official duties; and (3) the negligent act of the local agency falls within one of eight enumerated categories.  42 Pa. Const Stat § 8542.  The eight exceptions for which liability may be imposed on a municipality are: (1) vehicle liability; (2) care, custody or control of personal property; (3) care, custody, or control of real property; (4) trees, traffic controls, and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; and (8) care, custody, or control of animals.  Additionally, a municipality will not be held liable for the willful or wanton misconduct of its employees.  <u>Ballas v. City of Reading</u>, No. 00-CV-2943, 2001 U.S. Dist LEXIS 637 at *32 (E.D. Pa Jan. 26, 2001)(citing <u>Verde v. City of Philadelphia</u>, 862 F. Supp. 1329, 1336 (E.D. Pa. 1994).  Since the Legislature's intent was to

9

provide immunities, the Pennsylvania Supreme Court has held that the exceptions to immunity should be narrowly construed. Finn v. City of Philadelphia, 541 Pa. 596, 601, 664 A.2d 1342, 1344 (1995). See Also, Kiley by Kiley v. City of Philadelphia, 537 Pa. 502, 506, 645 A.2d 184, 185-86 (1994)("Because of the clear intent to insulate government from exposure to tort liability for any of its acts, exceptions carved out by the Legislature from this general rule are strictly construed."); Mascaro, 514 Pa. at 361 (explaining that exceptions to governmental immunity are to be "narrowly interpreted . . . given the expressed legislative intent to insulate political subdivisions from tort liability").

Wrongful termination is a common law tort claim that does not fall within the exceptions to immunity laid out in § 8542. Haiden v. Greene, No. 08-1481, 2009 U.S. Dist. Lexis 64409  at *6 (W.D. Pa. July 27, 2009). See Also, Snavely v. Arnold, No. 08-2165, 2009 U.S. Dist LEXIS 51415 at *22 n.8 (M.D. Pa. June 18, 2009)(citing Lancine v. Giles, 572 A.2d 827, 830 (Pa. Commw. Ct. 1990) (explaining wrongful discharge is not one of the articulated exceptions to 42 Pa. C. S. A. § 8541-8542); McNichols v. Commonwealth, Dep't. Of Transporation, 804 A.2d. 1264, 1267 (Pa. Commw. Ct. 2002) (explaining that wrongful discharge does not fall within any of the exceptions outlined in § 8542); Katzenmoyer v. City of Reading, 158 F. Supp 2d 491, 502-03 (E.D. Pa. 2001) (granting motion to dismiss for wrongful discharge

claim as to the city employer because Tort Claims Act bars claims for intentional torts).  What's more, Plaintiff's complaint alleges that the wrongful discharge was an intentional tort committed by the County's employees.  Thus, insofar as wrongful discharge is not one of the eight enumerated exceptions to immunity and since a County cannot be held liable for the intentional acts of its employees, Bucks County is entitled to immunity from this suit.

We also find no merit to Plaintiff's argument that her wrongful discharge claim falls within the exception dealing with the care, custody or control of personal property.  In Pennsylvania, public employees are deemed to be at-will employees and cannot be provided with tenure unless there is express legislative authority to do so.  Brown v. Trench, 787 F. 2d 167, 170 (3d Cir. 1986).  Pennsylvania courts will find a property right in public employment "only where the employee has an enforceable expectation of continued employment which can exist only if the employee, by statute or contract, has been granted some form of guarantee."  Hoffman v. Thome, No. 01-5622, 2002 U.S. Dist LEXIS 2695 at *5 (E.D. Pa. Feb 15, 2002) (quoting Batson v. Montgomery County, 557 A.2d 65, 66 (Pa. Commw. Ct. 1989)).

In reviewing Count I, we discern no averments that Plaintiff had any tenure rights or other reasonable expectation of

continued employment as the result of a contractual or statutory guarantee. Thus we find that Plaintiff is an at-will employee with no property right in her employment. Although the PWL guarantees that "[t]he County will not retaliate against an employee who (1) makes a good faith report verbally or in writing to the director of human resources or appropriate authority about an instance of waste or wrongdoing or (2) participates in the investigation of a report of waste or wrongdoing, or in a hearing, or court action," 43 P.S. § 1421 *et seq.*, the statute does not create an expectation of continued employment. Rather, the PWL just ensures that no one will be retaliated against for their acts. Therefore, in light of the policy of the Pennsylvania courts to narrowly construe the exceptions to the Torts Claims Act, we find that Plaintiff's claim does not fit into the private property exception.

For all of these reasons, the motion to dismiss the County of Bucks on grounds that it is shielded by the immunity conferred on it by Pennsylvania's Political Subdivision Tort Claims Act is granted.

*2. Defendant Damsker's Immunity*

The Defendants, in the motion to dismiss, further state that Defendant Damsker is also entitled to immunity under the Tort Claims Act. In response, Plaintiff claims that Defendant Damsker acted with willful misconduct and therefore should not be immune

under the Act.

The Tort Claims Act likewise extends immunity from liability to officials acting within the scope of their duties to the same extent as the local agency, except for acts constituting a crime, actual fraud, actual malice or willful misconduct. 42 Pa. C. S. §§ 8545, 8550. The Pennsylvania Supreme Court has explained that in order to qualify as willful misconduct the actor must have desired to bring about the result that followed, or was at least aware that the result was substantially certain to ensue. Evans v. Philadelphia Transp. Co., 418 Pa. 567, 574, 212 A. 2d 440, 443 (1965). See Also, Associates in Obstetrics & Gynecology v. Upper Merion Township, 270 F. Supp 2d 633, 663 (E.D. Pa. 2003) (quoting Robbins v. Cumberland County Children & Youth Services, 802 A.2d 1239, 1253 (Pa. Commw. Ct. 2003). ("For purposes of tort law, the state of Pennsylvania has defined willful misconduct as conduct whereby 'the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied'"). Furthermore, the accepted standard of review when considering a motion to dismiss is one that considers all reasonable inferences in plaintiff's favor. Ford v. Schering-Plough Corp., 145 F.3d 601, 604 (3rd Cir. 1998). Therefore, plaintiff's claim can only be dismissed if plaintiff can prove no set of facts to support his claim which would entitle him to relief. Id. at 604.

In reviewing the complaint for compliance with the standard set forth above, we find that Plaintiff has averred sufficient facts to prove that Defendant Damsker desired to bring about the result that followed, *i.e.,* having Plaintiff fired, or was substantially certain that the result would occur. In this regard, the complaint references Defendant Damsker's "nefarious motives," Defendant Damsker's repeated interrogation of Mrs. Palazzolo about her whereabouts the afternoon she met with Ms. Doran, and Defendant Damsker's instructions for Mrs. Palazzolo to bring in a note from her physician upon her return to work after her car accident, which was not mandated by County policy. Additionally, Count I alleges that Defendants terminated Mrs. Palazzolo's employment because she opposed the time-keeping practices of the employees in the Health Department and because she participated in the investigation of the Bucks County Auditor. In viewing all reasonable inferences in Plaintiff's favor, we can infer that Defendant Damsker desired or was substantially certain that Mrs. Palazzolo would be fired. Therefore the motion to dismiss on grounds that defendant Damsker is shielded by Tort Claims Act immunity is denied.

*B. Preemption*

The Defendants next move for dismissal of Count I of the Amended Complaint on the grounds that the wrongful discharge claim is preempted by the Pennsylvania Whistleblower Law, 43 P.S.

§ 1421, *et seq*.  Plaintiff argues that both claims should be able to go forward.

_____Pennsylvania law does not recognize a common law cause of action for violating public policy when there is an existing statutory remedy. <u>Preobrazhenskaya v. Mercy Hall Infirmary</u>, 71 Fed. Appx. 936, 2003 U.S. App. LEXIS 16347 at *12. (3rd Cir. 2003). <u>See Also</u>, <u>Wolk v. Saks Fifth Avenue, Inc.</u>, 782 F.2d 223, 224 n.3 (3rd Cir. 1984) ("The availability of a [statutory] remedy precludes other common law remedies even where the statute is not invoked"); <u>Bruffett v. Warner Communications, Inc.</u>, 692 F.2d 910, 918-19 (3d. Cir. 1982); <u>Jacques v. AKZO International Salt., Inc.</u>, 619 A.2d 748,753 (Pa. Super Ct. 1993) (citing <u>Clay v. Advanced Computer Applications</u>, 559 A.2d 917, 918 (Pa. 1989)) ("It is well-settled that the courts will not entertain a separate common law action for wrongful discharge where specific statutory remedies are available.").  Furthermore, it is the *existence* of a statutory claim, and not the *success* of one that determines preemption.  <u>DeMuro v. Philadelphia Housing Authority</u>, No. 98-3137, 1998 U.S. Dist LEXIS 20412 at *17 (E.D. Pa. Dec 21, 1998) (emphasis added and quoting <u>Jacques</u>, 619 A.2d at 753).  The reason for this rule is to prevent a claimant from circumventing the legislative procedures of the applicable statute.  <u>Scholly v. JMK Plastering, Inc.</u>, No. 07-4998, 2008 U.S. Dist LEXIS 49958 at *13 (E.D. Pa. June 27, 2008) (quoting *Bruffett,* 692 F.2d at 919).

15

Moreover, courts in this district have dismissed wrongful discharge claims when a plaintiff has also alleged a claim under the PWL. See, Rinehart v. Mt. Penn Borough Municipal Authority, No. 01-5628, 2002 U.S. Dist. LEXIS 24724, at *35-36 (E.D. Pa. Dec. 19, 2002) (dismissing wrongful discharge claim because "[t]he Pennsylvania legislature appears to have enacted the Whistleblower Law specifically to protect the interest of public employees and the public at large in circumstances such as those alleged, and [the plaintiff] had an appropriate statutory remedy"); Katzenmoyer v. City of Reading, 158 F. Supp. 2d 491, 503 (E.D. Pa. 2001)(dismissing a wrongful discharge claim because the claim might fall under the PWL); DeMuro, 1998 U.S. Dist LEXIS 20412 at *17 (granting a motion to dismiss a wrongful discharge claim because the plaintiff had a statutory remedy under the PWL); Freeman v. Mckellar, 795 F. Supp 733, 742 ( E.D. Pa Dec. 19, 2002) (granting a motion to dismiss for a wrongful discharge claim because the plaintiff had a statutory remedy under the PWL).

In the present case Plaintiff has alleged a PWL claim in the amended complaint. Therefore, assuming that the allegations are true, Plaintiff has an appropriate statutory remedy under the PWL and thus may not also allege a wrongful discharge claim. Accordingly, Count I of the amended complaint shall be dismissed in its entirety.

*2. Plaintiff's Age Discrimination Claim - Count III*

Defendants next move for dismissal of Plaintiff's claim for age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et. seq.* ("ADEA")(Count III) because Plaintiff fails to state a claim. Plaintiff believes she has averred a short and plain statement of the case and the question of whether the allegations are proven should be left to the summary judgement and trial phases of the case.

The ADEA prohibits employers from discriminating against individuals in the hiring, discharge, compensation, terms, conditions, or privileges of employment on the basis of their age. 29 U.S.C. § 621. Congress enacted the ADEA because of concern that older workers were being fired from their employment because of "inaccurate and stigmatizing stereotypes." Hazen Paper Co. v. Biggins, 507 U.S. 604, 610, 113 S. Ct. 1701, 1706, 123 L. Ed. 338, 347 (1993). Therefore, the ADEA requires that employers evaluate employees based on their merits and not based on their age. Id. at 611 (quoting Western Air Lines, Inc. v. Criswell, 472 U.S. 400, 422, 105 S. Ct. 2743, 2756, 86 L. Ed. 2d 321, 338-39 (1985)). The employer must focus directly on an employee's characteristics and not use age as a proxy for determining the employee's ability. Id.

According to the Third Circuit, to establish a prima facie case of age discrimination a plaintiff must show he or she: (1)

was a member of the protected class, *i.e.*, was over 40, (2) was qualified for the position, (3) suffered an adverse employment decision, and (4) ultimately was replaced by a person sufficiently younger to permit an inference of age discrimination.  <u>Monaco v. Am. Gen. Assurance Co.</u>, 359 F.3d 269, 300 (3d Cir. 2004).  The complaint must give enough factual basis to provide fair notice to the defendant of the allegedly unlawful conduct and to push the claim "across the line from conceivable to plausible."  <u>Pekar v. U.S. Steel/Edgar Thomson Works</u>, No. 09-844, 2010 U.S. Dist. LEXIS 7481 at *26 (W.D. Pa. Jan 29, 2010). <u>See</u>, <u>Iqbal</u>, 129 S. Ct. at 1951; <u>Flower v. UPMC Shadyside</u>, 578 F.3d at 213 (3rd Cir. 2009).  Following <u>Iqbal</u>, the United States Court of Appeals for the Third Circuit has instructed that district courts should first separate the factual and legal elements of a claim and then, accepting the "well-pleaded facts as true," "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" <u>Pekar</u>, No. 09-844, 2010 U.S. Dist. LEXIS 7481 at *26 (citing <u>Fowler</u>, 578 F.3d at 210-11).  Therefore, "a mere allegation that an adverse employment action was motivated by age, without more, is the type of conclusory allegation which the Supreme Court has found insufficient."  <u>Pekar</u>, 2010 U.S. Dist. LEXIS 7481 at *27. <u>See Also</u>, <u>Twombly</u>, 550 U.S. at 555; <u>Iqbal</u>, 129 S.Ct. at 1950.

In reviewing the complaint in this case, we find that it asserts factual allegations that: (1) Plaintiff filed a charge of discrimination with the EEOC, (2) Plaintiff was 54 years old at the time of her discharge, (3) Plaintiff's age was a "motivating" factor behind her discharge and (4) "Defendants" discrimination against her because of her age was "willful." However, absent from the pleaded facts is an allegation that the Plaintiff was replaced by a sufficiently younger individual. Therefore, the court agrees that the allegations outlined in the complaint are not sufficient to satisfy the Iqbal test and thus Count III of the amended complaint is dismissed with leave to amend one final time.

*4. Plaintiff's Punitive Damages Claims – Counts I and II.*

Defendants next move to dismiss Plaintiff's claims for punitive damages under the wrongful discharge claim as to the County in Count I and under the PWL as to the County and Defendant Damsker in Count II as punitive damages are unavailable to Plaintiff. Plaintiff responds that although some courts have held that punitive damages are unavailable under the PWL, the Supreme Court of Pennsylvania has not ruled on the issue. Therefore, Plaintiff asks that her claims for punitive damages not be dismissed.

*A. Punitive damages for wrongful discharge - Count I*

Defendants claim regarding the punitive damages for wrongful

19

termination will not be addressed because, as previously discussed, the claim has been dismissed in its entirety.

*B. Punitive Damages under the PWL - Count II*

Section 1425 of the PWL states:

> A court, in rendering a judgment in an action brought under this act, shall order, as the court considers appropriate, reinstatement of the employee, the payment of back wages, full reinstatement of fringe benefits and seniority rights, actual damages or any combination of these remedies. A court may also award the complainant all or a portion of the costs of litigation, including reasonable attorney fees and witness fees, if the court determines that the award is appropriate.

43 P.S. § 1425 (2010).

The statute also provides for the imposition of a civil fine of no more than $500, if the court finds that the violation was committed with the intent to prevent the disclosure of criminal activity. 43 P.S. § 1426.

In <u>O'Rourke v. Pennsylvania Department of Corrections</u>, 778 A.2d. 1194, 1202-03 (Pa. 2001), the Pennsylvania Supreme Court noted that punitive damages are unavailable under the PWL. And, in <u>Romano v. Bucks County Water & Sewage Authority</u>, No. 03-2296, 2004 U.S. Dist LEXIS 4919 at *3 (E.D. Pa. Mar. 25, 2004), our colleague, Judge McLaughlin explained that the plain language of the PWL strongly suggests punitive damages are unavailable under the statute. Judge Brody of this court has also ruled that the PWL does not include an award of punitive damages. <u>Rankin v. City of Philadelphia</u>, 963 F. Supp 463, 480 (E.D. Pa. 1997).

Indeed, Judge Brody explained that the PWL does not mention punitive damages and this omission does not seem to be an oversight on the part of the General Assembly. Id. at 478. The law indicates a comprehensive list of available remedies and the General Assembly provided this detailed list to provide the remedies it thought necessary to achieve the statute's purpose. Id. They did not include punitive damages but instead used the phrase "actual damages" which, as the Rankin decision points out, generally denotes compensatory damages. Id. The court goes on to say it seems implausible that the General Assembly simply overlooked punitive damages. Id. The court therefore found that the General Assembly deliberately chose not to extend this remedy to plaintiffs under the PWL and granted the defendant's motion for summary judgment on punitive damages. Id. at 480. See Also, Lawrence v. City of Bethlehem, No. 97-CV-1824, 1999 U.S. Dist. LEXIS 2838 at *19 (E.D. Pa. Mar. 1, 1999)(granting defendants' motion for summary judgment on punitive damage claims under the Whistleblower Law); Freese v. Centennial School District, No. 98-1773, 1999 U.S. Dist. LEXIS 11710 at *4 (E.D. Pa. July 22, 1999) (granting defendant's motion to strike plaintiff's claim for punitive damages under the Whistleblower Law).

Moreover, under Pennsylvania law when a statute provides a particular remedy, that remedy is exclusive. O'Roarke, 778 A.2d. at 1202-03(citing Pa. C.S. § 1504). Therefore a finding that

punitive damages are allowed under the PWL would conflict with the directions of the Pennsylvania Supreme Court. <u>Rankin</u>, 963 F. Supp. at 478. <u>See Also</u>, <u>Oteri Appeal,</u> 372 Pa. 557, 561 (Pa. 1953)(quoting <u>Derry Township School District v. Barnett Coal Co</u>., 332 Pa. 174, 2 A.2d 758, 760 (Pa. 1938))) ("When a statute provides a remedy by which a right may be enforced, no other remedy than that afforded by the statute can be used.").

In reviewing Count II in light of the foregoing, we are constrained to agree with the Defendants that punitive damages are unavailable to the Plaintiff and therefore Plaintiff's claim for punitive damages under Count II shall also be stricken.

It is for all of the foregoing reasons that the motion to dismiss is granted pursuant to the attached order.